IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

MARY GRAHAM BLISS

    Plaintiff,

v.                               Case No.: GJH-14-3855

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA**

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

"What is an accident? Everyone knows what an accident is until the word comes up in court. Then it becomes a mysterious phenomenon. . . ." *Brenneman v. St. Paul Fire and Marine Ins. Co.*, 411 Pa. 409, 412 (1963). While the precise legal definition of an accident may be complex and even mysterious, in this case, the Court finds that no definition of the word transforms the tragic death of Evan Bliss into an accident covered by his Accident Insurance Policy. Thus, for the reasons explained below, National Union's Motion to Dismiss is GRANTED.[1]

**I.    BACKGROUND**

This is a civil action brought by Plaintiff Mary Graham Bliss ("Mrs. Bliss") to recover benefits under an accident insurance policy issued by Defendant National Union Fire Insurance Company of Pittsburgh ("National Union") in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

---

[1] A hearing on the motion is unnecessary. *See* Local R. 105.6 (Md.).

Prior to his death, Evan Bliss ("Mr. Bliss") worked for the Henry M. Jackson Foundation for the Advancement of Military Medicine, Inc. *See* ECF No. 1 at ¶¶ 7– 8. On August 4, 2012, Mr. Bliss went on a business trip to Kenya. *See id.* at ¶ 11. While in Kenya, he "traveled in vans over rough roads in crowded conditions" and his return flights totaled approximately sixteen hours in the air. *Id.* After returning home, Mr. Bliss experienced fatigue, leg pain, and shortness of breath. *See id* at ¶ 12. He returned to work on August 13th and worked the following three days before taking a day off on August 17th. *See id.* Mr. Bliss died at his home on August 17th of a pulmonary thromboembolism. *See* ECF No. 13.

Mr. Bliss' employer carries an ERISA-governed Blanket Accident Insurance Policy (the "Policy") with National Union to insure its employees from accidents that occur at work. *See* ECF No. 1 at ¶ 28. Mrs. Bliss is the primary beneficiary of Mr. Bliss' Policy. *See id.* at ¶ 16. After Mr. Bliss' death, Mrs. Bliss submitted a claim under the Policy. *See id.* at ¶ 17. A National Union claims examiner denied the claim, finding that Mr. Bliss' death was not the result of an accident. *See* ECF No. 1-3. In deciding that the death was not covered by the Policy, the claims examiner noted that a man who traveled with Mr. Bliss "was unaware of any injuries to [Mr. Bliss] occurring on the trip" and that the medical examiner found no evidence of "internal blunt force trauma or penetrating trauma to the trunk or lower extremities." *See id.* He also noted that the medical examiner attributed the death to the long airline flight. *See id.* Under these facts, the claims examiner found that the death "was the result of an internal, biological process caused by prolonged sitting on an airline flight and was not the result of a bodily injury caused by an accident . . . ." *See id.* Mrs. Bliss appealed this decision, and National Union's appeals committee denied the claim on appeal on July 16, 2013. *See* ECF No. 1 at ¶ 23. Mrs. Bliss filed a Complaint in this Court on December 10, 2014. ECF No. 1. Defendant now moves to dismiss. ECF No. 9.

## II. STANDARD OF REVIEW

Unless an ERISA plan expressly grants the plan administrator discretionary authority to construe the provisions, interpretive decisions by administrators of ERISA plans are subject to *de novo* review. *United McGill Corp. v. Stinnett*, 154 F.3d 168, 170 (4th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989)). Under a *de novo* review, the court may consider the administrative record in addition to other evidence necessary to review the benefit decision. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993).

National Union has moved to dismiss Mrs. Bliss' Complaint based on Fed. R. Civ. P. 12(b)(6), which permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). The factual allegations must be more than "labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")). A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." *Id.* at 557. "A claim has

3

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

### III.   DISCUSSION

Under the Policy, National Union agreed to provide accidental death benefits to its employees if "[i]njury to the [employee] results in death within 365 days of the date of the accident that caused the [i]njury . . . ." *See* ECF No. 1-2 at 11. Injury is defined as "bodily injury *caused by* an accident . . . ." *See id.* at 8 (emphasis added). The accident must occur during a covered work-related hazard, which in this case was the trip to Kenya. *See id.* at 8 & 18. The Complaint alleges that "Mr. Bliss' death was the direct and proximate result of his business trip to Kenya." ECF No. 1 at ¶ 14. Specifically, the Complaint alleges that because Mr. Bliss was healthy before his trip to Kenya, then spent a week traveling in crowded vehicles over rough roads and flew in a plane for over sixteen hours, his sudden and unexpected death from an embolism six days after his return must have been caused by something that happened during his trip. *See* ECF Nos. 1 at ¶¶ 11–14 & 16 at 6–7.

Even assuming the truth of the factual allegations regarding Mr. Bliss' health and trip to Kenya, these facts do not permit the Court to infer anything more than a mere possibility that Mr. Bliss' death was caused by something that occurred during his trip to Kenya, and, accordingly, the Complaint fails to raise a right to relief above the speculative level. Indeed, in her Opposition to National Union's Motion to Dismiss, Mrs. Bliss identifies three possible causes of Mr. Bliss' death, *see* ECF No. 16 at 23–27, which indicates that Plaintiff is asking the Court to speculate.

Thus, as in *Twombly*, Plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 677 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

In her Opposition to National Union's Motion to Dismiss, Mrs. Bliss requests that the Court permit her to file an amended complaint to fix any insufficiencies in her Complaint. *See* ECF No. 16 at 27. Amendment, however, would be futile. Mrs. Bliss attached the National Union claims examiners' denial of her insurance claim to her Complaint. ECF No. 1-3. In the denial, the claims examiner noted that the medical examiner attributed the death to the long airline flight. But, as further explained below, even if the Court permitted Mrs. Bliss to amend her Complaint specifically to allege that the long airline flight caused Mr. Bliss' death, the Complaint would still warrant dismissal.

ERISA plans are interpreted "under ordinary principles of contract law." *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) (citation omitted). While federal common law is applicable to ERISA plans, state common law may also be used to guide the court's analysis.[2] *See id.* "Thus, both state law and general contract law principles inform [the Court's] attempt to divine the meaning of an undefined term in an ERISA plan." *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013) (citing *Regents of the Univ. of Mich. v.*

---

[2] Mrs. Bliss asserts that the Court must apply Maryland law when interpreting the policy because the policy specifically states that it is governed by the laws of Maryland. *See* ECF No. 16 at 12–13 & 1-2 at 2. Whether the Court applies Maryland law or federal common law is irrelevant because the principles of contract interpretation are the same. That said, federal common law controls here. *See Donovan v. Branch Banking & Trust Co.*, 220 F. Supp. 2d 560, 563 (S.D. W. Va. 2002) ("parties may not contract to choose state law as the governing law of an ERISA-governed benefit plan.") (citation and internal quotation marks omitted); *Yasko v. Reliance Standard Life Ins. Co.*, No. 12 C 02658, 2014 WL 2940536, at *3 n.5 (N.D. Ill. June 30, 2014) ("By its terms, the Reliance Policy is governed by Illinois law. Because this claim arises under ERISA, however, state laws governing insurance policy interpretation are preempted.").

*Emps. of Agency Rent–A–Car Hosp. Assoc.*, 122 F.3d 336, 339 (6th Cir.1997)). Under general principles of contract law, specific words and terms are given their ordinary and accepted meaning. *See Klein v. Fidelity & Deposit Co. of Am.*, 700 A.2d 262, 270 (Md. Ct. Spec. App. 1997). To determine what meaning a reasonably prudent layperson would attach to a term, Maryland courts often consult dictionaries. *See Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985) (To "accord[] words their ordinary and accepted meanings . . . [t]his Court has consulted Webster's Dictionary . . . ."). Policies are interpreted "in accord with the reasonable expectations" of the average policyholder in Maryland. *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 549 (Md. 1996). The court focuses on determining the intent of the parties with the language of the contract being the primary source for identifying this intent. *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir.2005). "[T]he intention of the parties is to be ascertained if reasonably possible from the policy as a whole." *Cheney v. Bell Nat. Life. Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989). Each clause "shall be given force and effect . . . to create a harmonious and coherent whole." *Prince George's Cnty. v. Local Gov't Ins. Trust*, 859 A.2d 353, 358 (Md. Ct. Spec. App. 2004), *aff'd*, 879 A.2d 81 (Md. 2005). "Where a term is ambiguous, [the court] must construe it against the drafter, and in accordance with the reasonable expectations of the insured[.]" *Wheeler*, 62 F.3d at 638 (citation omitted).

Because the word "accident" is not defined in the Policy, Mrs. Bliss points to the dictionary definition of the term which includes (1) "an unforeseen and unplanned event or circumstance"; (2) "an unfortunate event resulting especially from carelessness or ignorance"; (3) "an unexpected and medically important bodily event especially when injurious"; and (4) "an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but for which legal relief may be sought." *See* ECF No. 1 at ¶ 20

(quoting *Merriam-Webster.com*, accident, http://www.merriam-webster.com/dictionary/accident; *Merriam-Webster's Collegiate Dictionary*, accident (10th ed. 2001)). The Fourth Circuit has used similar definitions for the term accident, to include an "unforeseen and unplanned event or circumstance," "an unintentional, unplanned incident," or "an unintended occurrence." *See Johnson*, 716 F.3d at 820–21; *Whetsell v. Mut. Life Ins. Co. of New York*, 669 F.2d 955, 957 (4th Cir. 1982). The Supreme Court has similarly described an accident as "something unforeseen, unexpected, extraordinary, [or] an unlooked-for mishap . . . ." *Landress v. Pheonix Mut. Life Ins. Co.*, 291 U.S. 491, 495–96, 54 S. Ct. 461 (1934) (citations and internal quotation marks omitted). Using the common definition of accident, Maryland courts have determined that a negligent act can be an accident when the negligent act results in unexpected or unforeseen damage, *see Sheets*, 679 A.2d at 549, an intentional tort can be an accident when the results are unforeseen, unusual, and unexpected by the victim, *see Cole v. State Farm Mut. Ins. Co.*, 753 A.2d 533, 543 (Md. 2000), and an event, such as a car crash, can be considered an accident even if the means causing the accident were intended by the insured, such as drunk driver's decision to drive after consuming alcohol, *see Consumers Life Ins. V. Smith*, 587 A.2d 1119, 1124 (Md. Ct. Spec. App. 1991).

Mrs. Bliss argues that Mr. Bliss' death was not intended or expected and it was therefore an accident. *See* ECF No. 16 at 24–25. National Union does not reject Mrs. Bliss' definitions of "accident," but contends that the Policy requires that the death be "caused by an accident" and not simply that the result, i.e., the death, be the unexpected occurrence. *See* ECF No. 17 at 15. The distinction between an accidental cause and an accidental result in the context of an accident insurance policy has been the subject of significant legal discussion. The Tenth Circuit has summarized the distinction as follows:

> Under the stricter accidental means approach, the activity or occurrence that led to the injury must have been accidental; thus, if a decedent engaged in the fatal activity intentionally, recovery would be barred. On the other hand, under the less strict accidental result approach, if death was not a reasonably foreseeable result of the activity in question, recovery is permitted despite the decedent's engaging in the activity intentionally.

*Winchester v. Prudential Life Ins.*, 975 F.2d 1479, 1487 (10th Cir. 1992).

Mrs. Bliss correctly notes, however, that some courts have rejected the distinction between accidental means and accidental results. ECF No. 16 at 21; *see Wickman v. Nw. Nat'l Life Ins. Co.*, 908 F.2d 1077, 1086 (1st Cir. 1990) (noting that courts have become frustrated with the maze created by the means/injury distinction). In *Wickman*, a man died as a result of a fall from a bridge. *See id.* at 1079–80. Under the accidental death policy, the insurer was obligated to pay benefits for all causes of death if the death was accidental. *See id.* at 1081. Accident was defined in the policy as an "unexpected, external, violent and sudden event." *See id.* The Court examined whether, to be an accident under the policy, the act resulting in injury must be an accident or whether the ultimate injury itself must be the accident. *See id.* at 1085. The First Circuit determined that this distinction did not matter, and the definition of accident was satisfied if the act causing the injury was intended but the insured did not intend the result. *See id.* at 1086.[3] Mrs. Bliss argues that in this case, consistent with *Wickman*, even if the plane ride was intended, the result, Mr. Bliss' death, was not and was therefore an accident under the Policy.

Notably, however, in *Wickman* the policy covered any accidental death. Here, the Policy itself settles the means vs. result question in that it covers an injury resulting in death and defines injury as a "bodily injury *caused by an accident*". ECF No. 1-2 at 8 (emphasis added). Thus, by the clear language of the Policy, there must be an accident apart from the injury itself that serves as the cause of that injury. The pertinent question then is what is the accident that caused Mr.

---

[3] However, the Court determined that the insured's death was not an accident because the means and the result were both expected, or at least should have been expected, by the insured. *See Wickman*, 908 F.2d at 1089.

Bliss' injury? Is it the seemingly uneventful but lengthy flight? To declare that an accident would be to ignore the definitions provided both by dictionaries and case law as there was nothing unusual or unexpected about the flight. Is it the internal, biological process leading to the formation of the pulmonary thromboembolism? That would be the injury itself. Thus, there is no accident that Plaintiff can point to as the cause of Mr. Bliss' injury.

The Supreme Court's interpretation of the common understanding of "caused by an accident" as it is found in Article 17 of the Warsaw Convention is informative in this regard. Article 17 "establishes the liability of international air carriers for harm to passengers." Under Article 17,

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Like the accidental insurance contract in this case, the Warsaw Convention does not otherwise define the term accident. In *Air France v. Saks*, 470 U.S. 392, 394, 105 S. Ct. 1338 (1985), a woman became permanently deaf in her left ear after a 12-hour flight and filed suit under Article 17 of the Warsaw Convention. In interpreting the word accident, the Supreme Court indicated that Article 17 of the Warsaw Convention discriminates between cause and effect when it specifies that the air carriers are liable for an "accident which caused" the passenger's injury. *See id.* at 398–99. Thus, the Court reasoned, however accident is defined, it must be the cause of the injury and not "the occurrence of the injury alone." *See id.* at 399. The Court explained that typically when an accident is used to describe the cause of an injury, it is an "unexpected or unusual" event that is external from the passenger. *See id.* at 400, 405. Thus, because Article 17 indicates that the accident must cause the injury, the accident must be an event, separate from the

9

injury, that causes the injury. *See id.* The Court concluded that if an injury results from "the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident." *Id.* at 406.

At least three district courts have used the Supreme Court's interpretation of Article 17 of the Warsaw Convention to determine whether a passenger suffered an accident on an airplane for purposes of an accidental death policy governed by ERISA. *See Appeldorn v. Hartford Life & Acc. Ins. Co.*, No. 1:09-cv-069, 2010 WL 3475915 at * 5 (D.N.D. Sept. 2, 2010) (adopting Warsaw Convention reasoning in defining accident to find that developing meningitis on an ordinary and uneventful airplane flight does not qualify as an injury or accident under ERISA accidental insurance policy where policy defined injury as "bodily injury resulting directly and independently of all other causes from accident . . ."); *McAuley v. Fed. Ins. Co.*, No. 4:05CV1826 AGF, at 2009 WL 913510 (Mar. 31, 2009) (pulmonary embolism); *Williams v. Union Fire Ins. Co.*, No. 12cv01590 AJB, 2013 WL 1431822 (S.D. Cal. Apr. 9, 2013) (pulmonary embolism). *But see Yasko v. Reliance Standard Life Ins. Co.*, 53 F.Supp. 3d 1059, 1064–69 (N.D. Ill. 2014) (rejecting Supreme Court's interpretation in *Air France* as inapplicable and finding, under Seventh Circuit standard, that pulmonary embolism from sitting on airplane for long period was accidental death under policy because insured had a reasonable expectation of survival and death was not substantially certain from the insured's conduct).

This Court agrees with its sister courts that the Supreme Court's interpretation of the language of Article 17 of the Warsaw Convention is persuasive when interpreting the Policy in this case. Given that the Policy uses the same language as Article 17 of the Warsaw Convention—that the injury or damage must be caused by an accident—Mr. Bliss' internal reaction to the usual, normal, and expected operation of the aircraft was not caused by an

accident. *See Air France*, 470 U.S. at 406. Under Mrs. Bliss' interpretation, almost any death would be an accident, and the Court would effectively transform this accidental death benefit into a life insurance policy. *See Winchester*, 975 F.2d at 1486 ("typically, an accidental policy is available for considerably lower premiums than a life insurance policy, and we should be chary about fundamentally remaking a policy to cover situations not intended actuarially"). Such an interpretation would not be in line with the Policy's requirement that an accident cause the injury. For these reasons, even if the Complaint were amended to identify "sitting on an airplane" as the cause of Mr. Bliss' death, the Complaint would fail to state a claim.

## IV.   CONCLUSION

For the reasons stated above, National Union's Motion to Dismiss (ECF No. 9) is GRANTED. A separate Order follows.

Dated: September 17 , 2015

GEORGE J. HAZEL
United States District Judge